01

02

03

04

05

06

07

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

08  ANDREA HARRIS,     ) CASE NO. C07-1832 RAJ
          )
09    Plaintiff,    )
          )
10    v.      ) REPORT AND RECOMMENDATION
          ) RE: SOCIAL SECURITY
11  MICHAEL J. ASTRUE,   ) DISABILITY APPEAL
 Commissioner of Social Security, )
12            )
  Defendant.   )
13  _____)

14     Plaintiff Andrea Harris proceeds through counsel in her appeal of a final decision of the

15  Commissioner of the Social Security Administration (Commissioner).  The Commissioner denied

16  plaintiff's applications for Disability Insurance (DI) and Supplemental Security Income (SSI)

17  benefits after a hearing before an Administrative Law Judge (ALJ).  In her reply brief, plaintiff

18  requested oral argument.  Having considered the ALJ's decision, the administrative record (AR),

19  and all memoranda of record, the Court finds oral argument to be unnecessary, and recommends

20  that this matter be REMANDED for further administrative proceedings.

21  / / /

22  / / /

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -1

01                    **FACTS AND PROCEDURAL HISTORY**

02          Plaintiff was born on XXXX, 1966.[1]  She completed four years of college and earned a

03    Bachelor of Science degree in Social Work.  Plaintiff previously worked as a nurse assistant and

04    in medical transport.  (AR 33-34.)

05          Plaintiff filed a DI application and a SSI application on May 20, 2002, alleging disability

06    beginning December 31, 1998 due to an affective disorder (bipolar disorder) and irritable bowel

07    syndrome. (AR 36-37.) Her applications were denied at the initial level and on reconsideration,

08    and she timely requested a hearing.

09          ALJ Verrell Dethloff held a hearing on June 23, 2004, issuing a decision on August 4,

10    2004 finding plaintiff not disabled. (AR 407-418.)  Plaintiff requested review of the hearing

11    decision.  Finding the hearing tape to be lost and incorrect earnings records to have been utilized,

12    the case was remanded by the Appeals Council for a *de novo* hearing, which was conducted by

13    Judge Dethloff on December 8, 2005.  (AR 676-90.) At that hearing, plaintiff amended her

14    disability onset date to January 2001.  On March 31, 2006, the ALJ issued a decision finding

15    plaintiff not disabled. (AR 542-54.)  Plaintiff requested review, and the Appeals Council vacated

16    and remanded the case to another ALJ for hearing.  (AR 561-62.)  Because of the remand for

17    further consideration of the case, a subsequently-filed claim for SSI benefits was subsumed into

18    the pending claim.

19          ALJ M.J. Adams conducted a hearing on January 9, 2007, taking testimony from plaintiff

20

21          [1] Plaintiff's date of birth is redacted back to the year of birth in accordance with the
      General Order of the Court regarding Public Access to Electronic Case Files, pursuant to the
22    official policy on privacy adopted by the Judicial Conference of the United States.

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -2

01 and Susan Stewart, a vocational expert. (AR 691-725.) ALJ Adams issued a decision on April

02 9, 2007, finding plaintiff not disabled. (AR 25-35.)

03      Plaintiff timely appealed. The Appeals Council denied plaintiff's request for review on

04 September 12, 2007 (AR 9-12), making the ALJ's decision the final decision of the Commissioner.

05  Plaintiff appealed this final decision of the Commissioner to this Court.

06 **JURISDICTION**

07      The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

08 **DISCUSSION**

09      The Commissioner follows a five-step sequential evaluation process for determining

10 whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920 (2000). At step one, it must

11 be determined whether the claimant is gainfully employed. The ALJ found plaintiff had not

12 engaged in substantial gainful activity since her alleged onset date. At step two, it must be

13 determined whether a claimant suffers from a severe impairment. The ALJ found plaintiff's bipolar

14 disorder and irritable bowel syndrome severe. Step three asks whether a claimant's impairments

15 meet or equal a listed impairment. The ALJ found that plaintiff's impairments did not meet or

16 equal the criteria for any listed impairment, whether considered singly or in combination. If a

17 claimant's impairments do not meet or equal a listing, the Commissioner must assess residual

18 functional capacity (RFC) and determine at step four whether the claimant has demonstrated an

19 inability to perform past relevant work. The ALJ found plaintiff capable of all levels of physical

20 exertion. The ALJ found plaintiff restricted in her RFC by non-exertional limitations stemming

21 from her mental impairment, and found plaintiff able to understand, remember and carry out simple

22 instructions, make judgments commensurate with the functions of unskilled work (i.e., simple

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -3

01  work-related decisions), able to respond appropriately to supervision, co-workers and unusual

02  work situations, and able to deal with changes in a routine work setting.  The ALJ also found

03  plaintiff able to perform work activity on a consistent basis and to maintain regular attendance and

04  complete a normal workday and work week.  The ALJ determined that plaintiff was not able to

05  perform her past relevant work.  If a claimant demonstrates an inability to perform past relevant

06  work, the burden shifts to the Commissioner to demonstrate at step five that the claimant retains

07  the capacity to make an adjustment to work that exists in significant levels in the national

08  economy.  Relying on the testimony of the vocational expert, the ALJ concluded that plaintiff

09  could perform other work, such as work as a transporter of patients, a cleaner, and a courier

10  messenger.  Therefore, the ALJ found plaintiff not disabled.

11      This Court's review of the ALJ's decision is limited to whether the decision is in

12  accordance with the law and the findings supported by substantial evidence in the record as a

13  whole.  *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993).  Substantial evidence means more

14  than a scintilla, but less than a preponderance; it means such relevant evidence as a reasonable

15  mind might accept as adequate to support a conclusion.  *Magallanes v. Bowen*, 881 F.2d 747, 750

16  (9th Cir. 1989).  If there is more than one rational interpretation, one of which supports the ALJ's

17  decision, the Court must uphold that decision.  *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir.

18  2002).

19      Plaintiff argues[2] that the ALJ failed to give appropriate weight to the opinions of her

20  ──────────────

21      [2] Plaintiff's Opening Brief contains a lengthy Statement of Facts.  The parties are reminded
    that such a recitation is unnecessary and, in fact, discouraged.  Rather, a discussion of the relevant

22  facts and portions of the administrative record should be conducted  in the context of specific
    assignments of error.

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -4

01  treating and examining physicians, failed to properly consider her testimony, erred in concluding

02  her impairments did not meet or equal a listing, improperly assessed her RFC, and failed to meet

03  the burden of showing that other jobs exist in the national economy which she could perform.  She

04  requests remand for an award of benefits or, in the alternative, for further administrative

05  proceedings before a different ALJ.  The Commissioner argues that the ALJ's decision is

06  supported by substantial evidence and should be affirmed.

### Step Three Finding - Listing of Impairments

08       The third step of the sequential evaluation of disability followed by the Commissioner in

09  evaluating disability claims is to determine whether a claimant has any impairment which meets

10  or equals an impairment described in the SSA's Listing of Impairments, 20 C.F.R. Part 404, Subpt.

11  P, App. 1.  Although the Commissioner's determinations at steps four and five may be based on

12  credibility assessments, step three determinations are made purely on the medical evidence,

13  without consideration of age, education, or work experience.  *Bates v. Barnhart*, 222 F. Supp. 2d

14  1252, 1258 (D. Kan. 2002).  The listed impairments are considered so severe as to preclude

15  substantial gainful activity.

16       An impairment simply names a disorder, while a listing sets out the criteria from which it

17  can be determined whether the impairment is of sufficient severity to raise a presumption of

18  disability.  *Petition of Sullivan,* 904 F.2d 826, 840 (3d Cir. 1990).  It is not enough for a claimant

19  to show she has one of the listed impairments; she must show that her impairment meets or equals

20  the severity and durational requirements in order to be found *per se* disabled at step three.  *Young*

21  *v. Sullivan*, 911 F.2d 180, 181 (9th Cir. 1990).  In other words, the diagnosis of the impairment

22  is not enough. The claimant must show that she has the   *findings* shown in the listing of that

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -5

01  impairment.  *Key v. Heckler,* 754 F.2d 1545, 1549-50 (9th Cir. 1985). Although opinions from

02  medical sources will be considered on issues such as whether a claimant meets or equals a listing,

03  the final responsibility for deciding the issue is reserved to the Commissioner.  20 C.F.R §§

04  404.1527(e)(2), 416.927(e)(2).

05      The Listing of Impairments includes Mental Disorders, arranged in nine diagnostic

06  categories. 20 C.F.R. Part 404, Subpt. P, App. 1 § 12.00.  Plaintiff contends she meets the listing

07  requirements of § 12.04 (affective disorders) and should have been found disabled on this basis.[3]

08  Defendant argues that the ALJ properly evaluated the conflicting medical evidence and properly

09  concluded that plaintiff's mental impairment caused limitations but was not *per se* disabling.

10      The required level of severity for a § 12.04 affective disorder is met when there is medical

11  substantiation of the presence of a mental disorder (the "A" criteria, not at issue in this case), plus

12  at least two levels of functioning are found to be "markedly" impaired (the "B" criteria), <u>or</u> if

13  certain other specified functional criteria are satisfied (the "C" criteria).  In finding that plaintiff's

14  bipolar disorder did not meet the requirements of the listing for affective disorders, the ALJ found

15  as follows:

16      As for the claimant's bipolar disorder, it is found under medical listing 12.04.  In
        assessing the claimant's functional limitations under the "B" criteria, the

17      Administrative Law Judge finds the claimant has a mild restriction of activities of daily
        living; mild difficulties in maintaining social functioning; moderate difficulties in

18      maintaining concentration, persistence and pace; and no episodes of decompensation.
        With these functional limitations, the claimant's bipolar disorder does not fulfill the

19      "B" criteria and therefore fails to meet medical listing 12.04.

20      The Administrative law Judge has also considered whether the bipolar [disorder]

21      ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

22          [3] The ALJ also found that plaintiff's irritable bowel syndrome does not meet the
        requirements of any digestive body system listing (AR 29), a finding plaintiff does not dispute.

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -6

01    meets this listing through its "C" criteria.  But it does not do so because the claimant
       does not have repeated episodes of decompensation; she does not have such marginal
02    adjustment that even a minimal increase in mental demands or change in environment
       would be expected to cause decompensation; and she does not have 1 or more years'
03    inability to function outside a highly supportive living arrangement.

04    (AR 29.)

05             Plaintiff contends, without specific citation to the medical record, that the opinions of Zsolt

06    Lorant, M.D., and therapist Jo Ann Shepherd support a finding that she meets both the B and C

07    criteria of Listing 12.04.  It appears plaintiff has in mind certain opinions cited elsewhere in her

08    Opening Brief.  (*See* Dkt. 17 at 15) ("cl. became vegetative and incoherent" (AR 446); noting

09    marked restrictions in activities of daily living, extreme difficulties in maintaining social

10    functioning, marked deficiencies of concentration, and three episodes of decompensation (AR 529-

11    33).)

12             While the ALJ is not bound by the opinion of a treating doctor, he must explain why

13    "'significant, probative evidence has been rejected.'"  *Vincent v. Heckler*, 739 F.2d 1393, 1394-95

14    (9th Cir. 1984) (quoting *Cotter v. Harris*, 642 F.2d 700, 706 (9th Cir. 1981)).  An ALJ may reject

15    the uncontradicted medical opinion of a treating physician only for "clear and convincing reasons

16    *supported by substantial evidence in the record*."  *Holohan v. Massanari*, 246 F.3d 1195, 1202

17    (9th Cir. 2001) (emphasis added) (citing *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998)).

18     This higher standard is required because the treating physician "'is employed to cure and has a

19    greater opportunity to know and observe the patient as an individual.'"  *Bates v. Sullivan*, 894

20    F.2d 1059, 1063 (9th Cir. 1990) (quoting *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir,

21    1987)).

22             In reaching the conclusion that plaintiff's bipolar disorder did not meet the requirements

01  of Listing 12.04, the ALJ implicitly rejected the opinions of plaintiff's treating provider.  Yet, the

02  ALJ gave no reasons, let along "clear and convincing" ones, for rejecting the opinions.  Nor were

03  the ALJ's affirmative findings about the "B criteria" levels of plaintiff's functioning supported by

04  any references to the record. (AR 29 (finding "mild" restriction of activities of daily living, "mild"

05  difficulties in maintaining social functioning, "moderate difficulties in maintaining concentration,

06  persistence and pace").)  "We require the ALJ to build an accurate and logical bridge from the

07  evidence to her conclusions so that we may afford the claimant meaningful review of the SSA's

08  ultimate findings." *Blakes v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003).  The ALJ's step three

09  finding is not supported by substantial evidence.  The remedy for this error is discussed below.

10                                          Physicians' Opinions

11      Plaintiff contends that the ALJ did not give appropriate weight to the opinions of her

12  treating providers, citing at length numerous opinions and diagnoses from various medical

13  providers without comment or argument.  The scope of her actual assignment of error, however,

14  is more limited.  Plaintiff cites the opinion of her treating providers at Seattle Mental Health, Dr.

15  Lorant and therapist Shepherd, who wrote on January 3, 2007:

16          It is our opinion that Andrea can not enter the work force at this time nor has she
        been able to do so at any time during the course of treatment at Seattle Mental
17          Health.  It is our hope that in the future she may be able to return to school part-time
        and find a career that she can do on a part-time basis while maintaining important self-
18          care and parenting responsibilities in her life.  We are recommending that Andrea be
        placed on Social Security benefits.
19

20  (AR 656.)

21      Plaintiff argues that the reasons given by the ALJ for rejecting this opinion were not

22  convincing, contending the opinion was uncontradicted and, therefore, entitled to the highest

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -8

01  weight.   A treating physician's opinion is not necessarily conclusive as to either a physical

02  condition or the ultimate issue of disability.  *Rodriguez v. Bowen*, 876 F.2d 759, 761-62 & n.7 (9th

03  Cir. 1989).   The ALJ may disregard a treating physician's opinion whether or not that opinion is

04  contradicted.  *See id.*; *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986).  However, where

05  uncontradicted, the ALJ must provide clear and convincing reasons for doing so.      *Reddick v.*

06  *Chater*, 157 F.3d 715, 725 (9th Cir. 1998).

07       In addressing the opinion of Dr. Lorant and Ms. Shepherd that plaintiff could not work,

08  the ALJ stated as follows:

09       But their opinion in this letter is not convincing.  They refer time and time again to
         what the claimant told them about her symptoms and about their frequency and accept
10       these allegations apparently at face value.  Furthermore, the letter does not support
         the conclusion that the claimant could not work.  Dr. Lorant and therapist Shepherd
11       note that the claimant had been able to complete 45 credits at college.  This letter also
         indicated that the claimant had finally recognized that she had a bipolar disorder; that
12       she had stabilized to the point that her "episodes" were not as lengthy or as severe;
         and that she had been able to problem solve and set boundaries.  These improvements
13       are not consistent with the alleged inability to perform any work activity.

14  (AR 33; internal citations to administrative record omitted.).

15       The ALJ's conclusion that Dr. Lorant and Ms. Shepherd accepted what plaintiff told them

16  at face value is not supported by substantial evidence.  The ALJ did not connect this conclusion

17  to any specific reference to the medical records, and a review of the treatment notes of these

18  providers compels a contrary conclusion.  During clinical sessions, therapist Shepherd appeared

19  to have no reluctance to challenge plaintiff's self-assessments, or to re-direct plaintiff's

20  perceptions.  (*See*, *e.g.*, AR 359, 362, 449, 452, 463, 483.)

21       The ALJ gave other reasons for rejecting the conclusion of these providers that plaintiff

22  cannot work, noting plaintiff had completed 45 credits at college, had come to recognize that she

01  had a bipolar disorder, had stabilized to the point that her episodes were not as lengthy or as

02  severe, and had been able to problem solve and set boundaries. (AR 33.) However, the ALJ failed

03  to acknowledge or discuss the opinions of the same treatment providers diminishing the

04  persuasiveness of these particular factors as evidence of plaintiff's ability to work.  As Dr. Lorant

05  and Ms. Shepherd noted in their January 3, 2007 report, while plaintiff completed 45 credits of

06  college, she ultimately had to quit school because of hypo-manic episodes that ended in exhaustion

07  and depression.  (AR 654.)  While the providers noted plaintiff's progress in accepting the

08  diagnosis of bipolar disorder, as well as significant gains in understanding and managing her mental

09  health conditions and in setting boundaries, they also noted problematic patterns, cognitive

10  distortions, dysfunctional relationship dynamics, and lack of ability to moderate her activities and

11  set appropriate self care boundaries for herself, fueling episodes of hypo-manic and subsequent

12  depressive cycles.  (AR 655-56.)

13       Plaintiff also criticizes the ALJ's consideration of Ms. Shepherd's report of May 2004,

14  stating that plaintiff was easily stressed and that her mood lability significantly impaired her ability

15  to complete  daily tasks and maintain employment.  (AR 395.)  The ALJ found the opinion about

16  plaintiff's situation "during a depressed mood . . . not supported by other evidence in the record",

17  noting plaintiff "often does not experience her alleged mental symptoms." (AR 33.)  However, the

18  question before the Commissioner is plaintiff's "ability to work on a     *sustained* basis. . . .

19  Occasional symptom-free periods–and even the sporadic ability to work–are not inconsistent with

20  disability." *Lester v. Chater*, 81 F.3d 821, 833 (9th Cir. 1995) (citing 20 C.F.R. § 404.1512(a))

21  (emphasis in opinion.)  The fact that plaintiff may experience occasional improvement in her

22  symptoms of depression does not negate the disabling effect of that condition on her overall ability

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -10

01 to sustain work.

02        Plaintiff also points to the ALJ's failure to address other material medical evidence,

03 including the opinion of Shoshanna Press, M.D., that "the likelihood of recovery is poor and I

04 believe her condition will stay the same or deteriorate over the next twelve months, based on the

05 examination today, findings, and her current situation" (AR 212) and the opinions of ARNP

06 Kempf about the impact of plaintiff's difficulties with concentration, completing tasks in a timely

07 manner, and persistence on her ability to work (AR 392).  Although the Commissioner does not

08 address the lack of reference to ARNP Kempf's opinions, he suggests that Dr. Press's opinion

09 about plaintiff's prognosis was taken out of context, and that her prognosis was poor only because

10 she had ceased to take her medication during pregnancy.  However, the ALJ cited, and presumably

11 relied on, Dr. Press's opinion in analyzing plaintiff's credibility.  (AR 31.)  The failure of the ALJ

12 to later explain what weight was given to this opinion cannot be said to be harmless. *See Vincent*,

13 739 F.2d at 1394 (requiring the ALJ's findings to  be sufficiently detailed "to permit courts to

14 review those decisions intelligently.") (citing *Lewin v. Schwieker* , 654 F.2d 631, 634 (9th Cir.

15 1981)).

16        In sum, plaintiff demonstrates error in the ALJ's assessment of the physicians' opinions.

17 Again, the remedy for this error is discussed below.

18                                            Credibility Assessment

19        Absent evidence of malingering, an ALJ must provide clear and convincing reasons to

20 reject a claimant's testimony.  *See Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001).  In

21 finding a social security claimant's testimony unreliable, an ALJ must render a credibility

22 determination with sufficiently specific findings, supported by substantial evidence.  "General

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -11

01 findings are insufficient; rather, the ALJ must identify what testimony is not credible and what

02 evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834. "In weighing a

03 claimant's credibility, the ALJ may consider his reputation for truthfulness, inconsistencies either

04 in his testimony or between his testimony and his conduct, his daily activities, his work record, and

05 testimony from physicians and third parties concerning the nature, severity, and effect of the

06 symptoms of which he complains." *Light v. Social Sec. Admin.* , 119 F.3d 789, 792 (9th Cir.

07 1997).

08      In discussing plaintiff's testimony, the ALJ found as follows:

09      At the hearing, the claimant testified that she was alone at home after she sent her two
children off to school and to preschool.  According to her self-report, it took her a
10      long time in accomplishing tasks during the day, but this depended on how she felt at
the start of the day.  She reported increased difficulties if she had increased stress,
11      which would occur if she had two appointments in one day.  Her testimony indicated
that she had experienced an anxiety attack prior to her appearance at the hearing.

12
13      The claimant testified that she arose in the morning to prepare breakfast for her
children.  Although she stated that she is able to drive a car, she usually takes a bus
14      for transportation.  She reported "good phases" in which she experienced a very high
energy level in which she overbooked her activities, had difficulty in sleeping, and did
projects at night. During a "bad phase", she was depressed and unable to function,
15      according to her testimony.  The claimant also complained about such side effects
with her medications, as problems with focus.

16
17      In regard to her stomach complaints, the claimant reported that she had thought the
problem was irritable bowel syndrome, but an ulcer was found in her intestine.  She
18      reported diarrhea and pain and the sensation of a bowel movement but "nothing
happens".

19      The claimant also testified that she was unable to work due to stress that caused pain,
anxiety attacks, and uncontrolled emotions.
20
21      After considering the evidence of record, the undersigned finds that the claimant's
medically determinable impairment could reasonably be expected to produce the
alleged symptoms, but that the claimant's statements concerning the intensity,
22      persistence and limiting effects of these symptoms are not entirely credible.

The medical evidence does not support the degree of impairment alleged by the claimant. In fact, the medical evidence indicates improvement in her mental status when she took her medication. For instance, the claimant declared in March 2001 that she was feeling better. By her self-report in June 2002, the use of Zoloft helped her mental disorder. In June 2003, the claimant stated that her mood had improved, as had her energy level. She reported in September 2003 that she was "...doing much better" with more focus and an improved ability to plan. An increase in her symptoms began when the claimant was not taking any psychotropic medications during her pregnancies.

The question, then, has simply become one of treatment. As reported by Shoshanna Press, M.D., in 2002, the claimant's problems were treatable, but she was not getting the treatment that she needed.

Her level of activity is contradictory to her allegations of disability. In 2002, the claimant reported that she arose in the morning at 7:00 am to get her son ready for school. Afterward, she fixed her breakfast, went to her appointments. Her testimony also confirmed this routine. She alleged that her functioning was much lower on her "bad" days in which she allegedly required a longer period of time to shower and dress. According to the claimant, "bad" days encompassed 80% of the month.

But this allegation is not credible. If the claimant had so many bad days, it would have adversely affected her ability to care for her children, which the claimant has not alleged.

Furthermore, evaluations of the claimant throughout the time period since her alleged disability onset date have revealed rather normal findings. In February 2002, Edward Walker, M.D., reported that the claimant spoke without any latency. She also evidenced tightly associated thoughts, intact memory and attention, and good insight and judgment, despite a depressed mood and constricted affect. Two weeks later, the claimant was described as an individual who had a normal mood and affect, full orientation, with high insight and awareness. In June 2002, Shoshanna Press, M.D., reported that the claimant was fully oriented with the ability to remember 3 out of 3 objects after the passage of 5 minutes. She also had sufficient concentration to perform serial 3's. This doctor found that the claimant was a capable individual who could manage her own funds and whose judgment was intact.

In May 2003, Carole Hayes, BA, CDP, MA, of Seattle Mental Health, described the claimant as a well groomed individual with good eye contact, normal speech, appropriate thought content, intact immediate, recent and remote memory, and no cognitive impairments. Similar normal findings were made in July 2003, August 2003, January 2005, February 2005, May 2005, June 2005, August 2005, October 2005, and December 2005.

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -13

In fact, the times of increased mental symptoms were usually due to particular problems. The claimant has had on-going problems with her ex-husband. She has struggled with poverty and, as an immigrant from Germany, she has also struggled with cultural stress. As noted by a chart noted [sic] in March 2002, the claimant's symptoms were a normal response to "...several extreme stressors".

In 2003, the claimant complained that medications had helped a great deal, but she recently felt tired. But fatigue is a normal situation for a single parent with two children.

Furthermore, the claimant's allegations of disability provide a secondary gain. In December 2001, the claimant complained that she felt unable to perform the work program that the Washington State Department of social and Health Services was advising for her. Thus, her allegations of disability were a means to prevent her return to work activity.

Additionally, the claimant seems to have a sense of entitlement without a sense of responsibility. In November 2004, the claimant expressed her desire to have a 3rd child, although she complained about feeling overwhelmed with no break from taking care of her 2 children. She declared that it would not make sense for her to go back to work with her bipolar disorder and with insufficient support in childcare and "...besides she wants to have a third child." Thus, it appears that the claimant simply wanted to have another baby rather than return to work. As noted by her therapist, the claimant wanted to make choices for herself using other peoples' resources.

(AR 31-33; internal citations to administrative record omitted.)

Plaintiff contends, *inter alia*, that the ALJ failed to give adequate consideration to her testimony about her symptoms and functional limitations. She argues that improvement in her mental status when she took medication does not overcome the fact that her symptoms vary in intensity from day to day due to her bipolar disorder. She contends that none of the activities cited by the ALJ are inconsistent with her testimony about her difficulties, and do not show she is able to perform any type of full-time employment. Plaintiff disputes the suggestion that she must show an inability to care for her children in order to be found disabled, or that her reports of tiredness should be attributed to her status as a single parent rather than a side effect of her medications or

01   a symptom of depression.  She disagrees that her symptoms "were usually due to particular

02   problems" or that her stated inability to work is evidence of secondary gain.

03         The Commissioner avers that plaintiff engaged in daily activities inconsistent with her level

04   of alleged pain or other symptoms and that, despite needing more time to complete tasks, plaintiff

05   was able to get her children off to school and pre-school, care for them generally, keep her

06   appointments, fix meals, complete 45 credits of college credits, and utilize public transportation.

07   The Commissioner acknowledges that these activities do not necessarily show plaintiff was capable

08   of performing all work activity, nevertheless they are inconsistent with her alleged level of

09   impairment and would allow an adverse credibility inference.  Further, the Commissioner points

10   to the evidence of secondary gain and lack of motivation, as well as plaintiff's sense of entitlement

11   and the concerns of her therapists that she wanted to make choices for herself using other people's

12   resources.

13         With the possible exception of the incomplete reference to plaintiff's ability to complete

14   45 college credits, addressed previously in this Report and Recommendation, the ALJ's

15   interpretation as to the inconsistencies in the record between plaintiff's testimony and her various

16   activities appears rational.  Credibility determinations are the province of the ALJ. *Fair v. Bowen*,

17   885 F.2d 597, 604 (9th Cir. 1989). The ALJ may use "ordinary techniques of credibility

18   evaluation" to evaluate the claimant's testimony and, if specific, clear and convincing reasons are

19   provided for rejecting the testimony, the ALJ will be upheld. *Thomas*, 278 F.3d at 960.  If the

20   ALJ's credibility finding is supported by substantial evidence in the record, we may not engage in

21   second-guessing.  Although plaintiff urges a different conclusion, we must uphold the ALJ's

22   interpretation, if rational. *Id*. at 954.

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -15

01      Here, the ALJ did not totally reject plaintiff's testimony about her problems, but, rather,

02 found that the problems did not exist to the extent alleged.  Not all of an ALJ's reasons for

03 discrediting a claimant must be upheld, so long as substantial evidence supports the ALJ's

04 credibility conclusion. *Batson v. Commissioner of the Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th

05 Cir. 2004).  Plaintiff fails to support her contention that the ALJ failed to provide clear and

06 convincing reasons in evaluating the credibility of her testimony.

07                                  Residual Functional Capacity

08      The ALJ assessed plaintiff's RFC as follows:

09      The claimant does not have exertional limitations.  According to the assessment
        performed by Kathy Thomas, M.D., in November 2006, the claimant is able to sit,
10      stand and walk each for 8 hours a day.  Additionally, she was found to be able to lift
        and carry up to 50 pounds occasionally.
11
        In regard to the claimant's non-exertional limitations in her residual functional
12      capacity (RFC) stemming from her mental impairment, the Administrative Law Judge
        finds the claimant is able to understand, remember and carry out simple instructions;
13      make judgments commensurate with the functions of unskilled work, i.e. simple work-
        related decisions; can respond appropriately to supervision, co-workers, and usual
14      work situations; and can deal with changes in a routine work setting.

15      The evaluation performed by Shoshanna Press, M.D., provides support for these
        conclusions.  After examining the claimant in June 2002, this doctor concluded that
16      the claimant could accept instructions from supervisors, interact with coworkers and
        the public.  She was also found to be able to perform work activity on a consistent
17      basis and to maintain regular attendance and complete a normal workday and work
        week.
18

19 (AR 29-30; internal citations to administrative record omitted.)

20      Plaintiff argues that the ALJ's evaluation of her RFC was erroneous because of the

21 improper rejection or lack of proper consideration of the opinions of Dr. Lorant and Ms.

22 Shepherd, and because of the failure to consider the opinions of Ms. Kempf and the totality of the

01 opinions of Dr. Press.  The Commissioner points out that no doctor's opinion is conclusive on the

02 issue of plaintiff's ability to work, and avers that the ALJ's RFC finding included all work-related

03 limitations demonstrated by the reliable evidence.  *See Osenbrock v. Apfel*, 240 F.3d 1157, 1164-

04 65 (9th Cir. 2001) ("An ALJ is free to accept or reject restrictions in a hypothetical question that

05 are not supported by substantial evidence.")  Also, while conceding that the ALJ erred in

06 concluding that plaintiff retained the exertional capacity for a full range of work, rather than the

07 capacity for medium work as opined by Dr. Thomas, the Commissioner argues that the error is

08 harmless in light of the fact that jobs identified by the ALJ as within plaintiff's capacity were

09 limited to medium capacity jobs.

10 　　　　Because of the error identified in the ALJ's consideration of the opinions of plaintiff's

11 treating providers, the finding regarding her RFC is necessarily called into question.  As such,

12 plaintiff identifies reversible error in the ALJ's assessment of her RFC.

13 <u>Step Five Finding</u>

14 　　　　The Commissioner can satisfy his burden of showing that claimant can perform other work

15 that exists in significant numbers in the national economy by utilizing the testimony of a vocational

16 expert (VE) to describe what jobs the claimant can perform, given his or her RFC, as well as the

17 availability of such jobs.  *Tackett v. Apfel*, 180 F3d 1094, 1101 (9th Cir. 1999).  Plaintiff maintains

18 that the Commissioner failed to meet this burden, again pointing to errors in the ALJ's assessment

19 of the various medical opinions as necessarily implicating the ALJ's step five determination.  The

20 Commissioner asserts that the ALJ properly posed a hypothetical based on limitations supported

21 by the record and, based on the testimony of the VE, determined plaintiff could perform other

22 work at step five.

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -17

01     To be valid, a hypothetical posed to a VE must include all of the claimant's functional

02 limitations supported by the record.  *Thomas*, 278 F.3d at 956 (citing *Flores v. Shalala*, 49 F.3d

03 562, 570-71 (9th Cir. 1995)).  A VE's testimony based on an incomplete hypothetical lacks

04 evidentiary value to support a finding that a claimant can perform jobs in the national economy.

05 *Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993) (citing *DeLorme v. Sullivan*, 924 F.2d 841,

06 850 (9th Cir. 1991)).  Without the evidentiary foundation of the opinion of the VE, the ALJ's step

07 five finding lacks substantial evidence.

08     Here, the ALJ's step five finding was premised on the opinion testimony of a VE, who

09 identified jobs appropriate for an individual with the RFC described in a hypothetical propounded

10 by the ALJ.  Therefore, as with plaintiff's RFC, the error in the consideration of the opinions of

11 plaintiff's treating providers implicates the ALJ's step five determination.

12                                             Remedy

13     "Where the Commissioner fails to provide adequate reasons for rejecting the opinion of

14 a treating or examining physician, [the Court credits] that opinion as 'a matter of law.'"  *Lester*,

15 81 F.3d at 834 (finding that, if doctors' opinions and plaintiff's testimony were credited as true,

16 plaintiff's condition met a listing) (quoting  *Hammock v. Bowen*, 879 F.2d 498, 502 (9th Cir.

17 1989)). Crediting an opinion as a matter of law is appropriate when, taking that opinion as true,

18 the evidence supports a finding of disability.  *See*, *e.g.*, *Schneider v. Commissioner of Social Sec.

19 Admin.,* 223 F.3d 968, 976 (9th Cir. 2000) ("When the lay evidence that the ALJ rejected is given

20 the effect required by the federal regulations, it becomes clear that the severity of [plaintiff's]

21 functional limitations is sufficient to meet or equal [a listing.]");  *Smolen v. Chater*, 80 F.3d

22 1273, 1292 (9th Cir. 1996) (ALJ's reasoning for rejecting subjective symptom testimony,

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -18

01    physicians' opinions, and lay testimony legally insufficient; finding record fully developed and

02    disability finding clearly required).

03          Plaintiff argues incorrectly that this Court "must" credit the opinions of a treating doctor

04    as true, if the ALJ's reasons for rejecting the opinions lack substantial evidence. (Dkt. 17 at 14.)[4]

05    To the contrary, courts retain flexibility in applying this "'crediting as true' theory." *Connett v.*

06    *Barnhart*, 340 F.3d 871, 876 (9th Cir. 2003) (remanding for further determinations where there

07    were insufficient findings as to whether plaintiff's testimony should be credited as true).   The

08    decision whether to remand for further proceedings or for an award of benefits is within the

09    discretion of this Court.   *Holohan v. Massanari,* 246 F.3d 1195, 1210 (9th Cir. 2001) (citing

10    *Reddick v. Chater,* 157 F.3d 715, 728 (9th Cir. 1998)).   Remand is proper where additional

11    administrative proceedings could remedy the defects in the decision.  *Barbato v. Commissioner*

12    *of Soc. Sec. Admin.*, 923 F. Supp. 1273, 1277 (C.D. Cal. 1996) (citing *McAllister  v. Sullivan,*888

13    F.2d 599, 603 (9th Cir 1990) and *Salvador v. Sullivan*, 917 F.2d 13, 15 (9th Cir. 1990) ("We

14    exercise our discretion not to award benefits because there may be evidence in the record to which

15    the ALJ can point to provide the requisite specific and legitimate reasons for disregarding [the

16    treating physician's] opinion."))

17          The Court is mindful that three previous administrative hearings have been conducted in

18    this case, one being necessitated by misplacement of the hearing tape.  Nevertheless, the Court

19

20          [4] Indeed, plaintiff argues, without the citation of authority,  that the opinions of <u>all</u> of her
21    treating providers should be credited as true because of the ALJ's improper rejection of the
       opinions of Dr. Lorant and Ms. Shepherd, and the failure to consider the opinions of Ms. Kempf
22    and Dr. Press. (Dkt. 17 at 15 and Dkt. 19 at 6.)

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -19

01  finds that remand for an award of benefits is not warranted.  The Court does not find error in the

02  ALJ's consideration of the credibility of plaintiff's testimony.  Although the ALJ's consideration

03  of some of the medical opinions was deficient, the record as it stands, including the medical

04  evidence, does not necessarily compel a finding of disability.  Therefore, the matter should be

05  remanded for further administrative proceedings consistent with this Report and Recommendation.

06  Allegation of Bias

07        Plaintiff also argues that, if remanded for a new hearing, this matter should be assigned to

08  a different ALJ.  The Commissioner objects to this request, asserting that plaintiff has pointed to

09  nothing in the record  that would demonstrate  bias such that a reassignment to a different ALJ

10  is required.

11        In order to justify the assignment of a new ALJ based on a claim of bias, plaintiff must

12  show  that "'the ALJ's behavior, in the context of the whole case, was "so extreme as to display

13  clear inability to render fair judgment."'" *Bayliss v. Barnhart*, 427 F.3d 1211, 1214-15 (9th Cir.

14  2005) (quoting *Rollins v. Massanari*, 261 F.3d 853, 858 (9th Cir. 2001) (quoting *Liteky v. United*

15  *States*, 510 U.S. 540, 551 (1994))).  The Court starts with the presumption that the ALJ was

16  unbiased. *Id*. at 1215 (citing *Schweiker v. McClure*, 456 U.S. 188, 195 (1982)). Plaintiff can rebut

17  the presumption by showing a "'conflict of interest or some other specific reason for

18  disqualification.'" *Id*. (quoting  *Schweiker*, 456 U.S. at 195).

19        As argued by the Commissioner, there is no indication of bias on the part of the ALJ in this

20  case.  This Court routinely remands matters to ALJs who previously questioned the credibility of

21  claimants.  In the absence of a showing to the contrary, the Court must presume that the ALJ

22  would remain unbiased on remand.

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -20

01

**CONCLUSION**

02      For the reasons set forth above, this matter should be REMANDED for further

03 administrative proceedings.  The ALJ should reevaluate the opinions of the medical providers as

04 described herein, and reconsider the issue of whether plaintiff's bipolar disorder meets the listing

05 requirements for an Affective Disorder at step three of the sequential analysis.  Following that

06 reconsideration and reevaluation, if necessary, the ALJ should enter findings as to plaintiff's RFC

07 and proceed to steps four and five of the sequential analysis.

08      DATED this 3rd day of June, 2008.

09

10      _____
        Mary Alice Theiler
11      United States Magistrate Judge

12

13

14

15

16

17

18

19

20

21

22

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -21